

**FILED & ENTERED**

**JUN 09 2016**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gonzalez  DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:    Morad Javedanfar and Yaffa Javedanfar, Debtors | Case No.:    2:13-bk-27702-ER<br>Adv. No.:    2:15-ap-01123-ER |
| Manouchehr Fatirian and Eliza Fatirian,<br><br>                                Plaintiffs<br><br>                v.<br><br>Morad Javedanfar,<br><br>                                Defendant | **MEMORANDUM OF DECISION FINDING THAT PLAINTIFFS ARE NOT ENTITLED TO REVOCATION OF DEFENDANT'S DISCHARGE**<br><br>**TRIAL DATE:**<br><br>Date:    March 28, 2016<br>Time:    9:00 a.m.<br>Location:    Ctrm. 1568<br>            Roybal Federal Building<br>            255 East Temple Street<br>            Los Angeles, CA 90012 |

**I. Introduction**

   Plaintiffs Manouchehr Fatirian and Eliza Fatirian ("Plaintiffs") seek a judgment revoking the discharge of debtor Morad Javedanfar ("Defendant") pursuant to §727(d)(2). Defendant received $99,292.86 in post-petition distributions on account of his interest in various LLCs. Defendant did not report or turnover the distributions, which were property of the bankruptcy estate, to the Chapter 7 Trustee ("Trustee") until after Plaintiffs filed a motion for a Rule 2004 examination. Plaintiff's Rule 2004 motion sought the production of documents relating to the post-petition distributions from the company administering the LLCs. Subsequent to the Rule 2004 motion, Defendant returned all the post-petition distributions to the Trustee.

Plaintiffs argue that Defendant never would have returned the funds but for the exposure elicited by the Rule 2004 motion. Accordingly, Plaintiffs contend, the Defendant's discharge should be revoked pursuant to §727(d)(2), for "knowingly and fraudulently" concealing and withholding from the Trustee property of the estate.

Trial was conducted on March 28, 2016.[1] The parties submitted closing briefs on May 13, 2016. This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Civil Rule 52, made applicable to these proceedings by Bankruptcy Rule 7052.[2] For the reasons set forth below, the Court finds that Plaintiffs have failed to demonstrate, by a preponderance of the evidence, that Defendant knowingly and fraudulently concealed and withheld estate property from the Trustee. Judgment will be entered in favor of Defendant.

## II. Facts

The key facts are not in dispute. Defendant filed a voluntary Chapter 7 petition on July 11, 2013. Doc. No. 1, Case No. 2:13-bk-27702-ER.  At the time of the filing of the petition, Defendant owned membership interests in the following limited liability companies: (1) Chateau Spring Hill Partners, LLC ("Spring Hill LLC"); (2) Chateau Parkside Partners, LLC ("Parkside LLC"); and (3) Chateau Spring Terrace Partners, LLC ("Spring Terrace LLC") (collectively, the "Chateau LLC Interests"). Joint Pretrial Stipulation ("Pretrial Stip.") [Doc. No. 26] at ¶A.2. Defendant had periodically received prepetition distributions on account of the Chateau LLC Interests. On his schedules, Defendant claimed an aggregate exemption of $11,730.53 in the Chateau LLC Interests. Ex. 1.

On January 3, 2014—approximately six months after the filing of the petition—Defendant sent an e-mail to Susan Brickman, an administrator at Global Integrity Realty Corporation ("Global Realty"), the company managing the Chateau LLC Interests. In the e-mail, Defendant inquired about why he was no longer receiving distributions on account of the Chateau LLC Interests:

> The last few months I never received my checks. Would you please let me know what happened.

Ex. 7.

Defendant sent a follow-up e-mail repeating the inquiry on January 28, 2014. Ex. G. Sometime in February or March of 2014, Global Realty sent to Defendant several months' worth of distributions on account of the Chateau LLC Interests. The distributions were sent in the form of checks dated as early as October 8, 2013. Ex. 4–6. Henry Manoucheri, Global Realty's president and CEO, explained that the accounting department had held the checks, being unsure of whether they should be issued to Defendant given his pending bankruptcy. Tr. at 69:24–70:3. After consulting with his corporate counsel, Manoucheri directed that the checks be sent to Defendant. *Id.* at 70:3–9. Defendant continued receiving distributions until January 22, 2015. Defendant did not inform either his attorney or the Chapter 7 Trustee about the distributions prior to February 17, 2015:

> **Question:** After signing the check you deposited each check in your personal bank account in Shinhan Bank, didn't you?
> **Answer:** Yes, some of it I did. Some of it I did deposit in another bank.

---

[1] A transcript of the trial proceedings is available as docket entry 55 and is cited as "Tr."
[2] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§101–1532.

> **Question:** At the time that you received the checks you didn't report the distributions to the bankruptcy trustee, did you?
> **Answer:** No, I didn't.
> **Question:** And at the time that you deposited the checks you didn't pay over the money to the bankruptcy trustee, did you?
> **Answer:** No, I didn't.

Tr. at 23:7–18 (testimony of Defendant).

By January 22, 2015, Defendant had received a total of $99,292.86 in distributions. All of the distributions were property of the estate. A signification portion of those distributions came from a $60,603.45 check that was issued on September 10, 2014, and that Defendant deposited on October 30, 2014. Ex. 16 (copy of check); Tr. at 62:11–17 (testimony of Manoucheri regarding the issuance of the $60,603.45 check). The $60,603.45 distribution resulted from the refinancing of one of the properties held by the Parkside LLC. *Id.* at 61:9–20. Defendant received his discharge on August 11, 2014, approximately one month prior to issuance of the $60,603.45 refinancing check. Pretrial Stip. at ¶A.15.

On January 15, 2015, Defendant's counsel, Andre A. Khansari ("Khansari"), e-mailed Anthony Friedman ("Friedman"), the Trustee's counsel, regarding Defendant's account at Shinhan Bank ("Shinhan Account"). Friedman had inquired about the origin of the funds in the Shinhan Account. Khansari's e-mail provides:

> Per discussions with my Client, the deposits you have inquired about are primarily cash deposits relating to significant personal loans from Debtor Morad's [Defendant's] Father-in-Law, Brother-in-Law and Mother-in-Law (after the petition date). The loans from Father-in-Law and Brother-in-Law are listed on Schedule F of the petition. Please refer to the attached page of Schedule F showing the personal loans listed from Rahmat Dagan in the cumulative amount of $500k (Father-in-Law), and Saeed Dagan in the cumulative amount of $890k (Brother-in-Law). The loans were given through time upon the request of Debtors to assist them with the tough financial times.

Ex. 21.

Khansari's e-mail failed to mention that more than $60,000 of the funds in the Shinhan Account came from the Chateau LLC distributions. Defendant admitted that, at the time the e-mail was sent, he had not told Khansari that some of the funds in the Shinhan Account came from the Chateau LLC distributions. Tr. at 28:20–29:4.

On February 9, 2015, Plaintiffs filed a motion for a Bankruptcy Rule 2004 examination in Defendant's Chapter 7 case ("Rule 2004 Motion"). Pretrial Stip. at ¶A.9. The Rule 2004 Motion sought records from Global Realty regarding post-petition distributions made to Defendant on account of the Chateau LLC Interests. *Id.* The Rule 2004 Motion was served upon Defendant, his counsel, and the Trustee, giving them notice of the records sought. *Id.* On February 17, 2015, the Court granted the Rule 2004 Motion. Ex. K.

On February 17, 2015—the day that the Rule 2004 Motion was granted—Khansari telephoned Defendant regarding the Chateau LLC distributions. Khansari told Defendant that the distributions had to be returned to the Trustee. Tr. at 50:1–9 (testimony of Defendant). That same day, Khansari notified the Trustee's counsel, Anthony A. Friedman ("Friedman"), about the distributions. The next day, Khansari sent Friedman a partial accounting of the distributions. Ex. L. On March 2, 2015, Khansari received Defendant's check returning $60,603.45 of the distributions. Ex. O and T. The check was dated February 24 and Defendant had mailed it to Khansari on February 27. Khansari sent the check to the Trustee on March 4. Ex. V. The check

was for the return of the proceeds from the refinancing distribution that Defendant had deposited on October 30, 2014.

On March 6, 2015, Khansari sent Friedman a full accounting of the post-petition distributions that Defendant received on account of the Chateau LLC Interests. Ex. X and Y. On March 12, 2015, Defendant wrote a $38,689.41 check to the Trustee and sent it out by overnight delivery, thereby repaying the entire $99,292.86 in post-petition Chateau LLC distributions. Ex. AA and BB.

On May 1, 2015, Defendant filed amended schedules, increasing the exemption claimed in the Chateau LLCs from $11,730.53 to $25,728.53. Pretrial Stip. at ¶A.13. On June 18, 2015, the Trustee and Defendant entered into a Stipulation Between Chapter 7 Trustee and Debtors Regarding Debtors' Exemptions in Chateau Membership Interests ("Stipulation") [Doc. No. 77, Case No. 2:13-bk-27702-ER]. The Stipulation provides in relevant part:

> In connection with the filing of the Amended Exemptions, the Debtors disclosed the receipt of percentage distributions from the Chateau Membership Interests in the approximate amount of $100,000.00. Upon being advised that those distributions were property of the estate in accordance with 11 U.S.C. §541(a), the Debtors immediately turned over to the Trustee the full extent of the percentage distributions received on account of the Chateau Membership Interests.
>
> To date, the Trustee has received percentage distributions from the Chateau Membership Interests related to operating income, capital gains, equity and proceeds of sales as determined by the respective managing member per the respective operating agreement in the approximate aggregate amount of $110,000.00 (the "Estate Proceeds").

*Id.* at 3.

On July 10, 2015, the Court entered an order approving the Stipulation. Doc. No. 77, Case No. 2:13-bk-27702-ER. On July 15, 2015, the Trustee wrote a $25,728.53 check to the Debtors (Defendant and his jointly-filing spouse) on account of the amended exemptions. Ex. GG.

**III. Discussion**
A. Plaintiff Has Failed to Show that the Defendant Knowingly and Fraudulent Concealed the Chateau LLC Distributions

Section 727(d)(2) provides in relevant part: "On request of … a creditor, … and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee."

Section 727(d)(2) is construed liberally in favor of the Debtor, and strictly against the party objecting to or seeking to revoke the discharge. *First Beverly Bank v. Adeeb (In re Adeeb),* 787 F.2d 1339, 1342 (9th Cir.1986). To obtain discharge revocation, Plaintiff "bears the burden of proof and must establish all elements by a preponderance of the evidence." *United States Trustee v. Franz (In re Franz)*, 540 B.R. 765, 778 (Bankr. D. Mont. 2015). Plaintiff "must prove that the debtor acted with the knowing intent to defraud." *Bowman v. Belt Valley Bank (In re Bowman)*, 173 B.R. 922, 925 (B.A.P. 9th Cir. 1994). The "knowingly and fraudulent" standard "requires actual subjective intent, not 'constructive' intent. However, circumstantial evidence and inference can establish such intent." *Krommenhoek v. Covino (In re Covino)*, 241 B.R. 673, 678 (Bankr. D. Idaho 1999); *see also Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751, 753–

54 (9th Cir. 1985) ("[F]raudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct.").

The Court finds that Plaintiff has failed to demonstrate, by a preponderance of the evidence, that Defendant knowingly and fraudulently failed to report and turnover the Chateau LLC distributions to the Trustee.

Defendant's testimony showed that he did not understand how the bankruptcy exemptions process worked, or how the bankruptcy system dealt with after-acquired property. For example, Defendant testified that he believed that his exemptions would be "substantial," and that he would be permitted to retain as much as $300,000 of the post-petition Chateau LLC distributions. Tr. at 31:14–32:6. Defendant believed that he was entitled to retain the Chateau LLC distributions because he received them eight months after filing for bankruptcy, and he thought that the funds were exempt. Tr. at 49:6–11. Defendant credibly testified that when Khansari informed him that he was not entitled to the funds on February 17, 2015, he was surprised. Tr. at 50:1–9. Defendant assumed that were he not entitled to the distributions, the Trustee or Global Realty would have prevented him from receiving them:

> **Question:** And when you got those checks did you think you were allowed to keep them?
> **Answer:** Yes, I thought I was allowed.
> **Question:** What were your reasons for thinking that at the time?
> **Answer:** I received like ten checks together in the month of February or March of 2014, eight months after my bankruptcy, and Global Integrity they knew I'm in bankruptcy. They did send these checks to me and it was under my name, not the Trustee. So I thought these are my exemptions.
> **Question:** And did you think that at all because you had already told Global Realty about your bankruptcy?
> **Answer:** Yes.
> **Question:** Did you think that Global Realty or the Trustee would have prevented you from getting these checks if they thought they should?
> **Answer:** If they thought they should, yes.

Tr. at 49:1–18.

The Court finds that Defendant genuinely believed that he was entitled to retain the Chateau LLC distributions, and rejects Plaintiff's contention that Defendant's explanation was concocted after the fact to conceal fraudulent intent. The fact that Defendant's belief was incorrect is not evidence of a fraudulent scheme. Most debtors, and even many attorneys, do not understand bankruptcy exemptions or the disposition of after-acquired property. Indeed, even Global Realty's corporate counsel, a trained attorney, mistakenly believed that Global Realty should send the post-petition distributions to the Defendant, rather than to the Trustee. Further, Defendant had notified Global Realty of his bankruptcy, and reasonably believed that Global Realty would not have sent him the checks were he not entitled to them. *See* Ex. C (e-mail from Defendant to Susan Brinkman, informing Global Realty of his bankruptcy filing and requesting documents pertaining to the Chateau LLCs).

Moreover, Defendant's behavior subsequent to learning that he was not entitled to the distributions does not suggest a scheme to defraud the estate. Khansari informed Defendant of his non-entitlement to the distributions on February 17, 2015. By February 27, Defendant mailed a check to Khansari returning $60,603.45 of the funds. Khansari forwarded the check to the Trustee shortly thereafter. By March 12, Defendant returned the remaining $38,689.41 to the Trustee via overnight delivery. Defendant did not seek to withhold from the estate anything on

account of his exemptions. In fact, on July 15, 2015, the Trustee returned to Defendant $25,728.53 of the funds on account of Defendant's exemptions.

In arguing for revocation of Defendant's discharge, Plaintiffs primarily rely upon the fact that Defendant did not report and turnover the Chateau LLC distributions until after Plaintiffs' Rule 2004 Motion. According to Plaintiffs, the timing of the disclosure and turnover shows that Defendant was knowingly and fraudulently concealing the Chateau LLC distributions from the estate. Plaintiffs argue that but for the Rule 2004 Motion, this alleged knowing concealment would have continued indefinitely.

The evidence adduced at trial does not support Plaintiffs' theory. Instead, the evidence shows that the initial nondisclosure resulted from Defendant's flawed understanding of the bankruptcy process, in particular his incorrect belief that the Chateau LLC distributions were not estate property. Not realizing that the distributions were estate property, Defendant did not inform his attorney Khansari about them. As a result, Khansari did not become aware of the post-petition distributions until the filing of the Rule 2004 Motion. As soon as Khansari became aware of the post-petition distributions, he contacted the Defendant and the Trustee. While it was Plaintiff's Rule 2004 Motion that triggered Khansari's awareness, this fact alone does not demonstrate knowing and fraudulent concealment on the part of the Defendant.

Plaintiffs advance several additional arguments as to why Defendant's testimony is not credible, but the Court does not find these arguments persuasive. First, Plaintiffs point to Defendant's failure to inform his attorney that approximately $60,000 of the funds in Defendant's Shinhan Account came from the post-petition Chateau LLC distributions. The Court does not agree that this failure demonstrates that Defendant was trying to hide the Chateau LLC distributions from either his attorney Khansari or from the Trustee. As noted above, Defendant failed to inform Khansari of the distributions because he incorrectly believed that the distributions were not estate property. Further, only a small portion of the funds in the Shinhan Account came from the Chateau LLC distributions. In response to the Trustee's query about the origin of the funds in the Shinhan Account, Khansari explained that $500,000 was a loan from the Defendant's father-in-law, and $890,000 was a loan from Defendant's brother-in-law. Both loans were disclosed on Schedule F. Only $60,600 of the funds were attributable to the Chateau LLC distributions. Defendant's non-disclosure of these funds suggests an oversight, rather than intentional fraudulent concealment, particularly given that Defendant had already fully disclosed the existence of the Chateau LLCs and had provided the Trustee operating documents and tax returns regarding the LLCs. *See* Tr. at 99:14–24 (testimony of Friedman) (stating that Defendant provided operating agreements and documentation regarding the Chateau LLCs); Tr. at 47:7–20 (testimony of Defendant) (stating that he provided the Trustee operating agreements and tax returns of the Chateau LLCs).

Second, Plaintiff highlights several minor discrepancies on Defendant's schedules. Plaintiff notes that the Statement of Financial Affairs showed income of $3,500 from the Chateau LLCs during 2013, but that *Schedule I—Current Income* showed income of $0. Plaintiff points to Form 22A, which also incorrectly stated that Defendant's income was $0.

Defendant testified that he relied upon his attorney in the preparation of his bankruptcy schedules and that no one at the meeting of creditors mentioned the discrepancy between the Statement of Financial Affairs and Schedule I and Form 22A. Tr. at 46:5–19. The Court rejects Plaintiff's contention that the discrepancy provides evidence of Defendant's alleged propensity to mislead and defraud the Court and creditors. Instead, the discrepancy suggests inadvertence rather than fraud. Such inadvertent discrepancies are unfortunately, in the Court's experience, all

too common. Had Defendant intended to conceal his interest in the Chateau LLCs, he would have not scheduled them at all, or would have listed the Chateau LLC's income as $0 on the Statement of Financial Affairs.

Third, Plaintiff contends that Defendant's recounting of praise he claimed to have received from the Trustee demonstrates Defendant's tendency to make dubious, non-credible statements under oath. Defendant testified that at one of the meetings of creditors, the Trustee told him that "I was one of the best debtors of bankruptcy people that they ever had because I gave them every document that they wanted at the right time without hesitation." Tr. at 47:24–48:6. Friedman, who attended some of the meetings of creditors, could not recall whether the Trustee made the statement or not. Tr. at 100:7–11.

Defendant's testimony does not show that he has a propensity to make non-credible statements under oath. Plaintiff has not presented competent evidence showing that the Trustee did not praise Defendant's responsiveness to document requests. Even if Defendant did exaggerate the Trustee's praise, such an exaggeration hardly shows that Defendant has a predilection to make false statements under oath.

The cases dealing with §727(d)(2) lend further support to the Court's findings. In *In re Schwartz*, 64 B.R. 285 (Bankr. D.N.H. 1986), the debtors scheduled an interest in a wrap-around mortgage on residential property. The debtors then sold the property subject to the mortgage but retained the proceeds, which they spent on funeral expenses. When the debtors' attorney learned of the receipt and disposition of the funds, she informed the Trustee, and the debtors agreed on a repayment plan. After the debtors defaulted on the repayment plan, the Trustee sued to revoke their discharge. In finding for the debtors, the court observed that Trustee had not notified the debtors that the mortgage proceeds were property of the estate. *Id.* at 287.

Similarly, in the instant case nothing in the record shows that the Trustee specifically advised the Defendant that the post-petition Chateau LLC distributions were property of the estate. While the absence of such notification by the Trustee is not conclusive, it bolsters the Court's finding that the Defendant did not possess the requisite "knowing and fraudulent" intent to conceal property of the estate. By contrast, in cases where discharge revocation has occurred, the debtors were clearly warned that the concealed property was part of the bankruptcy estate. For example, in *Fokkena v. Klages (In re Klages)*, 381 B.R. 550 (B.A.P. 8th Cir. 2008), the debtor received both written and oral warnings not to spend a post-petition tax refund. *See also In re Argiannis*, 183 B.R. 307, 311 (Bankr. M.D. Fla. 1995) ("Even after the plaintiff specifically instructed the defendants to surrender rent proceeds to him, the defendants continued to collect rent and use rent proceeds at their discretion. Considering all the circumstances in this case, the defendants' fraudulent intent is apparent because the defendants knew that the rents had to be reported and surrendered to the trustee and they failed to do so."); *In re Muniz*, 320 B.R. 697, 701 (Bankr. D. Colo. 2005) (debtor acted fraudulently by failing to turn over a tax refund after multiple demands by the Trustee).

This case also bears some similarities to *McDermott v. David (In re Davis)*, 538 B.R. 368 (Bankr. S.D. Ohio 2015), in which the court found that the debtor's delay in reporting a post-petition inheritance to the Trustee was not a failure to report within the meaning of §727(d)(2). *Id.* at 386–87. Here, although the Defendant delayed reporting the Chateau LLC distributions, he ultimately both reported and returned all the distributions to the estate.

B. Plaintiffs' Alleged Failure to Diligently Investigate Possible Fraud Pre-Discharge is Not Fatal to Their Complaint

As an alternative ground for relief, Defendant argues that Plaintiffs failed to diligently investigate the possibility that Defendant may have committed fraud prior to the entry of his discharge, and that this alleged failure bars them from seeking discharge revocation. The Court does not agree that §727(d)(2) imposes upon Plaintiffs a duty of diligent investigation pre-discharge.

Section 727(d)(1) limits relief to parties who did not know of the debtor's fraud prior to discharge. Section 727(d)(2) contains no such limitation. However, the Ninth Circuit has held that §727(d)(2) requires that the party seeking discharge revocation must have learned of the debtor's fraud after the discharge had been granted. *Dietz v. Mitchell (In re Dietz)*, 914 F.2d 161, 163 (9th Cir. 1990).

Defendant's argument is that Plaintiffs knew enough about the Defendant's Chateau LLC Interests pre-discharge to require them to conduct a further investigation. Plaintiff's failure to conduct such an investigation, Defendant argues, prevents them from seeking discharge revocation now.

*Dietz* holds that a party with pre-discharge knowledge of a debtor's fraudulent conduct cannot wait until after the discharge to seek revocation. However, nothing in *Dietz* requires creditors to diligently investigate debtors pre-discharge in order to preserve the right to seek revocation should wrongdoing be subsequently discovered. The Court declines to read such a requirement into the statute.

The Court will enter judgment consistent with this Memorandum of Decision.

### 

Date: June 9, 2016

Ernest M. Robles
United States Bankruptcy Judge